**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ROBERT L. RUCKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 08-1213 |
| | ) | |
| CITY OF PITTSBURGH, | ) | District Judge David S. Cercone |
| TIMOTHY MATSON, individually and, | ) | |
| in his official capacity, | ) | Magistrate Judge Lisa Pupo Lenihan |
| LEROY HAMMOND-SCHROCK, | ) | |
| individually and in his official capacity, and | ) | Re: ECF No. 35 |
| NEAL MARABELLO, individually and | ) | |
| in his official capacity, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## REPORT AND RECOMMENDATION

### I.  RECOMMENDATION

It is respectfully recommended that the Defendants' Motion for Summary Judgment at

ECF No. 35 be granted insofar as it relates to Plaintiff's conspiracy and false arrest claims, and

as it relates to Plaintiff's § 1983 claims against Defendant City of Pittsburgh.  It is also

recommended that Defendants' Motion for Summary Judgment at ECF No. 35 be denied insofar

as it relates to Plaintiff's excessive force claim and supplemental state law tort claims against all

Defendants.

### II.  REPORT

Plaintiff, Robert L. Rucker ("Plaintiff" or "Rucker"), filed this action pursuant to 42

U.S.C. §§ 1983 and 1985(2) alleging violations of his Fourth and Fourteenth Amendment rights.

Specifically, Plaintiff avers that Defendant Officers Timothy Matson ("Officer Matson"), Leroy

Hammond-Schrock ("Officer Hammond-Schrock"), and Neal Marabello ("Officer Marabello") subjected him to excessive force and unlawful arrest, and then conspired to falsely charge and imprison him. Plaintiff further alleges that Defendant City of Pittsburgh ("the City") is liable for failing to supervise and/or properly train Defendant Officers Matson, Hammond-Schrock, and Marabello. In addition, Plaintiff's Amended Complaint (ECF No. 26) includes supplemental Pennsylvania state law claims of assault and battery, false imprisonment, and intentional infliction of emotional distress.

Presently before the Court is Defendants' Motion for Summary Judgment. After its preliminary review of the parties' submissions on summary judgment, the Court entered an order on July 26, 2010, directing the parties to brief the issue of whether the doctrine of *Heck v. Humphrey*, 512 U.S. 477 (1994), bars any or all of Plaintiff's claims. The parties complied with the Court's order and Defendants' Motion for Summary Judgment is ready for disposition.

A. Facts

Unless otherwise indicated, the undisputed facts of record are as follows:

On September 3, 2006, 25 year-old Rucker and his girlfriend, Jessica M. Walls ("Walls"), were on a date in the South Side area of the City of Pittsburgh. Both Rucker and Walls consumed alcoholic beverages at several locations over the course of the evening. During this time, Rucker and Walls became engaged in an argument which continued while driving back to Walls' apartment on Roup Street. Once there, Walls initially refused to get out of the car until they resolved their argument. Plaintiff claims that Walls refused to get out of the car unless he agreed to get out and come into the apartment with her, which Plaintiff refused to do.

The parties dispute the manner in which Walls left the car and the nature and sequence of subsequent events.  Plaintiff claims that he got out of his car to walk home in order to leave the premises, then when Walls exited the car and followed Plaintiff, he ran back to the car, got in, locked the doors, and began to drive home.  At that point, Plaintiff claims Walls leapt onto his hood, grabbed the windshield wiper, lost her balance, and fell to the ground.  Plaintiff claims he had been going ten (10) miles per hour as he was just pulling away from the curb.  He stopped the vehicle to check on Walls' condition, then drove away.  Defendant Officers claim that they observed Walls walk around in front of Plaintiff's car, that Plaintiff then drove into her, sending her onto the hood, and driving off after she fell.

The parties agree that a City of Pittsburgh Police van was traveling nearby on Roup Street at the time of the incident.  Seeing Walls fall, Officer Matson got out of the van to assist her while Officer Hammond-Schrock then left to pull over Plaintiff.  Hammond-Schrock activated his lights, and Plaintiff stopped.  Hammond-Schrock called for backup, and Officer Marabello and Officer Donald Novac ("Officer Novac") responded, each in their own police cruiser.  Hammond-Schrock ordered Plaintiff to turn off his car and throw the keys out of the vehicle.  Plaintiff then opened the driver's-side door of the car, and Hammond-Schrock forcibly shut the door and ordered him to remain in the vehicle.  At this point, Officers Marabello and Novac arrived.  After speaking about the incident, Matson and Walls walked to the location where Plaintiff had been pulled over.

The parties dispute the circumstances of this stop and what happened next.  Defendants claim that Officer Hammond-Schrock forcibly shut Plaintiff's driver's-side door because Plaintiff tried to exit the vehicle, and then ordered Plaintiff to place his hands on the steering wheel.  Plaintiff claims he had to open his door in order to comply with Officer Hammond-

3

Schrock's request for his keys, as his driver's-side window was not operational. Plaintiff denies that Officer Hammond-Schrock told him to place his hands on the steering wheel because Officer Hammond-Schrock allowed Plaintiff to smoke a cigarette while waiting for other officers to arrive on the scene. Once all officers were on the scene, Defendant Officers claim that they ordered Plaintiff to exit the vehicle, and when he repeatedly refused, Officer Marabello tased him. Plaintiff claims that he was never told to exit the vehicle and was instead forcibly removed by Officer Hammond-Schrock, who had his gun drawn, and Officer Novac. Plaintiff notes that Defendant Hammond-Schrock has conceded in his deposition testimony that Plaintiff never attempted to strike the officers, and never expressed any specific verbal threats or other intent to assault them. As he attempted to exit the car under his own power while questioning the officers about why this was happening, Officer Marabello tased Plaintiff in the chest and stomach after allegedly being on the scene for less than one minute. Plaintiff fell face forward to the ground after being tased. He was then handcuffed and arrested. The parties agree that Walls did not observe the tasing of Plaintiff, but dispute whether Officer Matson did; Plaintiff claims Matson was on the scene and was present as he was tased, while Defendants claim Matson was with Walls, and only arrived after Plaintiff was already on the ground in handcuffs.

Regarding Pittsburgh Bureau of Police policy on police training and use of force, the parties agree, based on testimony by Officer David Wright, the Lead Use of Force instructor at the Pittsburgh Police Training Academy, that the bureau teaches its officers a five-step "continuum" of control. Step 1 is mere presence of a uniformed officer at the scene; Step 2 is use of verbal commands; Step 3 is "force and restraint"; Step 4 is intermediate force (batons, employment of canines, non-lethal ammunition); and Step 5 is deadly force. (Wright Dep., ECF No. 36-5 at 27-28.) Use of a taser falls under step 3, "restraint and control," which also permits

4

use of "come-along holds," pressure points, soft and hard empty hand techniques, presence of canines, and use of pepper spray. The appropriate level of force depends on several factors, one of which is the level of resistance being offered by the actor. There are four levels of resistance ranging from passive resistance (when an actor is merely verbally refusing to comply with orders and is "dead weight"), to defensive resistance (where, for example, an actor might grip tightly to a chair or other object while being led away by officers), to active resistance, and finally to assaultive resistance when officers are in personal danger. In general, Step 3 on the continuum of control is only appropriate for defensive, active, and assaultive resistance; passive resistance does not warrant force and restraint. (Wright Dep., ECF No. 36-5 at 21).

In order to qualify for possession and use of a taser, officers undergo numerous hours of training (including being tased themselves) and must pass written and practical exams on the device's operation. In addition, they must re-certify annually. (Wright Dep., ECF No. 36-5 at 12-17). Officers are taught the City of Pittsburgh's policy during their initial training, but are only tested on the written exam on general operating parameters set by the taser manufacturer. (Wright Dep., ECF No. 36-5 at 17). Elements of training include when taser usage is inappropriate, such as on the elderly or around combustible materials, and also on best practices suggested by the manufacturer taken from police departments worldwide. (Wright Dep., ECF No. 36-5 at 12-17). Officers are instructed when using a taser how to "cuff under power"; in other words, when one officer tases an actor, the actor will feel the effects for at least five seconds, during which time other officers may subdue and handcuff the actor.

The parties dispute whether the use of a taser was reasonable in this situation. Defendants claim that tasers will not injure a person when applied; Plaintiff offers evidence of significant, long-lasting physical injury to rebut this claim. Defendants also claim that police

officers should at all times use necessary and reasonable force based on their perception of the incident, while Plaintiff argues that tasing was too severe of a restraint mechanism for the incident giving rise to this action, and that tasers should only be deployed when citizens are actively, defensively, or aggressively resisting. Plaintiff points to the testimonies of Officer Wright and Officer Marabello, which both state that the City does not give specific guidance as to when a taser gun should be used versus the other possible methods of restraint once an officer reaches Step 3 of the force continuum. Officer Novac testified that he was equipped with pepper spray that evening and was authorized to use it if Plaintiff was "non-compliant." Novac indicated he did not use his pepper spray on the night in question. Plaintiff maintains he was only passively resisting if not complying fully with police commands during this incident; Defendants claim he was actively and aggressively resisting.

The parties further disagree over the way in which this incident was documented and reported. According to the deposition testimony of Officer Matson, Pittsburgh police officers typically prepare investigative reports relating the facts of the incident. Supplemental reports may also be prepared by other officers on request of a supervisor that clarify or give more information. The parties do not dispute that Officer Matson prepared the investigative report with help from Officer Hammond-Schrock. The parties disagree about the accuracy of events described in the investigative report. The Plaintiff points to Officer Hammond-Schrock's deposition testimony stating that he could not recall Plaintiff attempting to force his car door open, but merely assumed that it happened because the report reflected the same. A supplemental report was also filed relating to this incident, which was allegedly prepared by Officer Hammond-Schrock. In his deposition testimony, however, Hammond-Schrock did not recall preparing the report, nor did he recall being asked by a supervisor to clarify or supplement

the investigative report. Further, the supplemental report stated that Officer Hammond-Schrock and Officer Novac attempted "come along hold" maneuvers on Plaintiff prior to tasing him. In deposition, Hammond-Schrock testified that the information must have been added after the fact as a clarification, but that he had no recollection of attempting a "come along hold" on Plaintiff that evening.

It is undisputed that once arrested, Officers Matson and Hammond-Schrock transported the Plaintiff in the police wagon to West Penn Hospital, where the taser prongs were removed and he was medically cleared for incarceration. The officers then transported Plaintiff to the Allegheny County Jail, and Plaintiff was charged with aggravated assault, recklessly endangering another person, resisting arrest or other law enforcement, and an accident involving death or personal injury. Plaintiff was detained overnight at the Allegheny County Jail until he could be seen by a magistrate. All charges were either dismissed by the magistrate and/or withdrawn at the preliminary hearing. A summary charge of disorderly conduct was added, and the Plaintiff pled guilty to this charge on the advice of counsel.

Plaintiff claims that he was advised by his counsel to accept the disorderly conduct charge; Plaintiff indicated that he did not know the charge was appealable until after the time to appeal had passed. Defendants claim that with the Plaintiff's guilty plea to disorderly conduct, his ability to contest the prior charges against him is foreclosed.

Plaintiff claims he has no prior or subsequent criminal history, and that it was necessary for him to seek medical attention on several occasions because of the injuries he suffered as a result of this incident. Plaintiff indicated that he collapsed at his workplace and had to be rushed by ambulance to the hospital. He has been advised that he has neurological damage as a result of

the incident, and suffered chest pains, tingling in his arms, anxiety and emotional distress, and numerous other symptoms and injuries.

B.  Legal Standard

Summary judgment is appropriate if, drawing all inferences in favor of the nonmoving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56 (c).  Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact.  Once that burden has been met, the nonmoving party must set forth "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law.  Matsushita Elec. Indus. Corp. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis added by Matsushita Court).  An issue is genuine only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  Anderson v. Liberty-Lobby, Inc., 477 U.S. 242, 248 (1986).  While any evidence used to support a motion for summary judgment must be admissible, it is not necessary for it to be in admissible form.  See Fed.R.Civ.P. 56 (e); Celotex Corp., 477 U.S. at 324; J.F. Feeser,Inc., v. Serv-A-Portion, Inc., 909 F.2d 1524,1542 (3d Cir. 1990).

C.  The *Heck* Doctrine

In *Heck v. Humphrey,* the United States Supreme Court held that a prisoner may not

bring a claim pursuant to 42 U.S.C. § 1983, even if not seeking relief from the fact or duration of

confinement, for alleged unconstitutional conduct that would invalidate his underlying sentence

or conviction unless that conviction has already been called into question.  512 U.S. at 486-87.

In this way, individuals may not collaterally attack their underlying convictions, directly or

indirectly, by bringing a § 1983 claim.  In order to assess whether a § 1983 claim should be

dismissed as an impermissible collateral attack on an underlying conviction, the United States

Supreme Court instructed as follows:

> [T]he district court must consider whether a judgment in favor of the plaintiff
> would necessarily imply the invalidity of his conviction or sentence; if it would,
> the complaint must be dismissed unless the plaintiff can demonstrate that the
> conviction or sentence has already been invalidated.  But if the district court
> determines that the plaintiff's action, even if successful, will *not* demonstrate the
> invalidity of any outstanding criminal judgment against the plaintiff, the action
> should be allowed to proceed, in the absence of some other bar to the suit.

*Id.* at 487(emphasis in original) (footnotes omitted).


D.  Analysis


1.  Fourth and Fourteenth Amendment Claims under Section 1983

Section 1983 of the Civil Rights Act provides as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage of
any State or Territory or the District of Columbia, subjects, or causes to be subjected, any
citizen of the United States or any other person within the jurisdiction thereof to the
deprivation of any rights, privileges, or immunities secured by the Constitution and laws,
shall be liable to the party injured in an action at law, suit in equity, or other proper
proceeding for redress. . . .

42 U.S.C. § 1983. Thus, to state a claim for relief under this provision, the Plaintiff must show that a person or entity acting under the color of state law deprived him of rights, privileges, or immunities secured by statute or by the Constitution of the United States. *Piecknick v. Commonwealth of Pennsylvania*, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

Excessive Force

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . . ." U.S. CONST., Amend. IV. The Fourteenth Amendment made this provision applicable to the states. *Ker v. California*, 374 U.S. 23, 30 (1963).

In order to make out a claim for excessive force as an unreasonable seizure under the Fourth Amendment, Plaintiff must show that a seizure occurred and that it was unreasonable. *Abraham v. Raso*, 183 F.3d 279, 288 (3d Cir. 1999). Here, the parties do not appear to dispute that the Plaintiff was seized, thus the only issue for this Court on Defendants' Motion for Summary Judgment is whether the force utilized to achieve that seizure was objectively reasonable. The United States Court of Appeals for the Third Circuit has stated that whether the use of force is objectively reasonable is determined by analyzing a series of factors:

> [T]he severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight[,] . . . [whether] the physical force applied was of such an extent as to lead to injury[,] . . . the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time.

*Sharrar v. Felsing*, 128 F.3d 810, 821-22 (3d Cir. 1997) (internal citations and quotations omitted), *abrogated on other grounds by Curley v. Klem*, 499 F.3d 199, 209-11 (3d Cir. 2007). In addition, in *Graham v. Connor*, the United States Supreme Court held that whether use of force was excessive must be evaluated under the totality of the circumstances. 490 U.S. 386, 396-97 (1989). The *Graham* Court acknowledged that "[t]he calculus of reasonableness must embody allowance for the fact that 'police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation.'" 490 U.S. at 396-97 (internal quotations omitted). Reasonableness must be judged from the perspective of a reasonable officer on the scene. *Graham,* 490 U.S. at 396. *See Curley,* 499 F.3d at 206-07.

Officers can also be held liable based on a theory of failure to intervene when they fail to stop another officer from using excessive force. Courts in many jurisdictions have consistently held that a police officer has a duty to at least take reasonable steps to protect [an actor] from another officer's use of excessive force. *Abrahante v. Johnson*, Civil No. 07-5701, 2009 U.S. Dist. LEXIS 59835, (D.N.J. Jul. 14, 2009) (citing *Byrd v. Clark*, 783 F.2d 1002, 1007 (11th Cir. 1986)); *see also Smith v. Mensinger*, 293 F.3d 641, 650-51 (3d Cir. 2002) (citing *Byrd*, 783 F.2d at 1007; *Putman v. Gerloff*, 639 F.2d 415, 423 (8th Cir. 1981); *Byrd v. Brishke*, 466 F.2d 6, 11 (7th Cir. 1972)). If officers fail or refuse to intervene when a constitutional violation is underway, the officer is directly liable under 42 U.S.C. § 1983. *Id.* It is typically for the jury to decide whether officers had a "realistic and reasonable opportunity to intervene," and if there is a dispute over material facts that would prevent the court from making such a determination, a motion for summary judgment must be denied. *Smith*, 293 F.3d at 650-51.

Here, genuine issues of material fact exist as to whether the amount of force used by Defendant Officers Matson, Hammond-Schrock, and Marabello was excessive. In fact, it is disputed whether some of the Defendants used force at all, and indeed, whether all of the Defendants were even on the scene at the time of the incident giving rise to this action.

Plaintiff alleges that he suffered injuries as a result of the alleged excessive force. It is undisputed that Officer Marabello shot Plaintiff with the taser. Prior to that event, however, Officer Hammond-Schrock pulled Plaintiff over, and there is significant dispute over what he ordered Plaintiff to do, and whether he attempted to use force along with Officer Novac to seek compliance. It is undisputed that Officer Matson initially responded to Ms. Walls after she fell to the pavement on Roup Street, and that he arrived sometime later at the arrest scene on foot. It is disputed, however, when Matson arrived. Taking Plaintiff's facts as true and all reasonable inferences that can be drawn therefrom, Officer Matson was present on the scene prior to Officer Marabello employing the taser, and therefore, would have been in a position to intervene if excessive force was employed. Matson contends he did not arrive until after the tasing and arrest had occurred.

Essentially, Plaintiff contends that Marabello used excessive force with the taser, that Hammond-Schrock used excessive force himself by kicking Plaintiff's car door shut, pointing his weapon at Plaintiff, and dragging Plaintiff out of the car and setting him up to be tased, as well as failing to intervene to stop Marabello from tasing him. Finally, Plaintiff argues that Matson failed to intervene to stop Marabello and Hammond-Schrock.

Typically, reasonableness under the Fourth Amendment is an issue for the jury. *See Rivas v. City of Passaic*, 365 F. 3d 181, 198 (3d Cir. 2004); *Kopec v. Tate*, 361 F.3d 772, 777 (3d Cir. 2004). In light of the disputed issues of material fact on this issue, Defendants' Motion for

Summary Judgment on Plaintiff's claim for excessive force under the Fourth and Fourteenth Amendments should be denied.

For similar reasons, qualified immunity should be denied to Defendants with regard to the excessive force claim. Defendants assert that qualified immunity shields them from all allegations in this action. For police officers, qualified immunity is applicable when the officer does not violate clearly established statutory or constitutional law of which a reasonable person would have been aware. *Harlow v. Fitzgerald*, 457 U.S. 800, 817-18 (1982). Qualified immunity is not merely a defense to liability; it is immunity from suit. Consequently, it is effectively lost if a case goes to trial when immunity should have been granted, and the issue is generally one for courts to resolve as early in the litigation process as possible. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). It is Defendants' burden to establish that they are entitled to qualified immunity. *See Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 726 (3d Cir. 1989).

The qualified immunity analysis has two distinct prongs. The recent United States Supreme Court decision in *Pearson v. Callahan* gives District Court judges discretion regarding the order in which they address the two-prong analysis in light of the circumstances of a particular case. 129 S. Ct. 808, 818 (2009). The first of the prongs is whether "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The court must also consider whether the right was "clearly established," that is, whether the "contours" of the right were delineated with such clarity that a reasonable officer in the defendant's circumstances would be aware that his conduct violated the right. *Id*. at 201-02.

In light of the deposition testimony of Pittsburgh Police Lead Use of Force Instructor David Wright, a reasonable jury could conclude that the use of a taser on the Plaintiff was excessive and that the Plaintiff's Fourth Amendment rights were violated by Defendants. The right was clearly established in this jurisdiction prior to September 3, 2006, based on *Sharrar v. Felsing* in 1997. *See* 128 F.3d at 821-22. Officer Marabello also testified that he was aware of *Graham v. Connor* and that it was used in Pittsburgh Police Bureau training. Based on Wright's testimony[1], a reasonable officer in the Defendants' position would have been aware that tasing Plaintiff while he was not actively, defensively, or assaultively resisting would violate Plaintiff's Fourth Amendment rights. Since the level and nature of resistance presented by Plaintiff directly bears upon qualified immunity, and the facts and circumstances surrounding these issues are disputed, qualified immunity should be denied.

Nor is Plaintiff's claim of excessive force barred by the doctrine of *Heck v. Humphrey*, 512 U.S. at 486-87. Plaintiff pled guilty to a charge of disorderly conduct, a crime characterized by a person engaging in physically or verbally threatening and/or disruptive conduct. 18 Pa. C.S. § 5503(a). Plaintiff's success on his claim of excessive force against the individual Defendants does not necessarily invalidate the charge of disorderly conduct to which Plaintiff pled guilty. That is, a court could find that the degree of force employed by the Defendants in effectuating the arrest was unreasonable under the circumstances, and still determine that Plaintiff's own conduct met the requirements for the charge of disorderly conduct. Therefore, Plaintiff's claim of excessive force is not barred by *Heck*.

---

[1] Wright conceded that if a non-resisting person sitting in a vehicle was shot with a taser gun under circumstances similar to those set forth by Plaintiff, use of the taser would not be appropriate and "a red flag" would "certainly" go up within the Pittsburgh Bureau of Police. The report as filed by the Defendant Officers did not raise any so-called red flags with Officer Wright at the time. ECF No. 44-7 at 78:9-80:12.

<u>False Arrest and Imprisonment</u>

The Defendant Officers do not address Plaintiff's claim for false arrest and imprisonment in either their motion for summary judgment (ECF No. 35) or the supporting memorandum of law (ECF No. 37). The United States Supreme Court has indicated that "the movant must discharge the burden the Rules place upon him: It is not enough to move for summary judgment without supporting the motion in any way or with a conclusory assertion that the plaintiff has no evidence to prove his case." *Celotex Corp.*, 477 U.S. at 328 (White, J., concurring). In the case at bar, Defendants offer no support in their Motion for Summary Judgment on the false arrest and imprisonment claim under the Fourth and Fourteenth Amendments, and summary judgment would ordinarily be denied as to this claim.

Plaintiff's claim of false arrest and imprisonment, however, is barred by *Heck.* Plaintiff alleges that he never engaged in any threatening or disruptive conduct towards the individual Defendants at the scene. (Plaintiff's Counter statement of Facts, ECF No. 42 at ¶¶ 20, 24.) Consequently, any argument by Plaintiff that Defendants lacked probable cause to arrest him would necessitate a finding that Plaintiff did not engage in any sort of threatening behavior, which is a basic element of the charge to which Plaintiff pled guilty. Therefore, because Plaintiff's guilty plea to disorderly conduct would be undermined by his claim for false arrest and imprisonment, the Court finds that *Heck* requires dismissal of this claim unless Plaintiff's charge of disorderly conduct was terminated in his favor. It is undisputed that Plaintiff pled guilty to the charge and that he did not take an appeal. Further, Plaintiff has presented no evidence that his conviction was otherwise favorably terminated. *See Heck,* 512 U.S. at 486 (Favorable termination includes a conviction that is "reversed on direct appeal, expunged by

executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of *habeas corpus*.").

2. Municipal Liability of the City of Pittsburgh

In *Monell v. New York City Dep't of Social Servs.*, the United States Supreme Court held that municipalities and local governmental units are "persons" subject to liability under 42 U.S.C. § 1983. 436 U.S. 658 (1978). Municipal liability may not be premised merely on the fact that the municipality employed the governmental official in question, that is, through application of the doctrine of *respondeat superior*. Instead, municipalities can only be held liable under § 1983 when its "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell*, 436 U.S. at 694. This requirement legally distinguishes the acts of the municipality itself from the acts of employees of that municipality, thus limiting liability only to instances for which the municipality is actually directly responsible. *Id.*

To establish municipal liability pursuant to § 1983, Plaintiff is required to identify the policy, custom, or practice of the municipality that results in the constitutional violation. *Id.* at 690-91. A municipal policy is deemed to have been made when a decision-maker issues an official decision or proclamation. *Pembaur v. City of Cincinnati*, 475 U.S.469, 481 (1986). A custom or a practice, however, can be found with no official declaration, but by showing a course of conduct so permanent and widespread that it has the force of law. *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990). For liability premised upon a custom or practice, Plaintiff is required to demonstrate that the decision-maker had notice that a constitutional violation could occur and that the decision-maker instead acted with deliberate

indifference to the risk. *Berg v. County of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000). Finally, Plaintiff is required to show either an "affirmative link" or "plausible nexus" between the custom or practice and the alleged constitutional deprivation. *Bielevicz v. Dubinon*, 915 F.2d 845, 850-51 (3d Cir. 1990). So long as this link is not too tenuous, whether the municipality was the proximate cause of the constitutional violation and thus the injury to the Plaintiff, is a matter left to the jury. *Id*. at 851 (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985)).

Plaintiff argues that the City's failure to supervise and control the Defendant Officers directly resulted in his injuries. The Court of Appeals for the Third Circuit set forth the standard for supervisory liability under 42 U.S.C. § 1983 in *Sample v. Diecks*, 885 F.2d 1099 (3d Cir. 1989). In order to establish supervisory liability, a plaintiff must identify a specific supervisory practice or procedure that the defendant failed to employ. *Id* at 1118. (citing *City of Canton v. Harris*, 489 U.S. 378 (1989)). In addition, plaintiff must show that (1) the existing custom and practice minus that supervisory practice created an unreasonable risk of the alleged conduct, (2) the supervisor was aware that an unreasonable risk of the conduct existed, (3) the supervisor was indifferent to that risk, and (4) the injury resulted from the policy or practice. *Id*.

In the present case, the Plaintiff argues that the City of Pittsburgh failed to supervise Defendant Officers in their use of force, specifically with regard to the Police Bureau's policy on tasers. Viewing the facts and all reasonable inferences drawn therefrom in favor of the Plaintiff, he has failed to raise a genuine issue of material fact for trial on his claim against the City. Officer David Wright's testimony that he, as the Police Bureau's Lead Use of Force Instructor, reviews every use of force encounter and writes quarterly reports on use of force throughout the Pittsburgh Police Department, strongly suggests that use of force is well-supervised in the City. (Wright Dep., ECF No. 36-5 at 18). Plaintiff has not raised an issue of material fact concerning

a specific gap in municipal supervision with regard to use of force; in fact, as he admitted under oath, he has no knowledge of the City's policies. (Rucker Dep., ECF No. 36-1 at 2-3). There are no disputed facts regarding awareness or deliberate indifference. Plaintiff makes only cursory arguments regarding lack of supervision, and presents no additional evidence that either a policy or a custom of excessive force was in place in Defendant City in 2006. It is clear from the testimony of Officer Wright and the individual Defendant Officers that use of force within the department was reviewed and supervised, and that the City and its Police Bureau were not deliberately indifferent as to how it was employed by its police force.

Next, Plaintiff argues that his injuries occurred as a result of a lack of adequate training in the use of tasers within the Pittsburgh Police Bureau. To establish liability on a failure to train, Plaintiff is required to show that the need for more or different training was "so obvious" and "so likely" to lead to the violation of constitutional rights that the policymaker's failure to respond amounts to deliberate indifference. *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001) (citing *City of Canton*, 489 U.S. at 390).

Here, Plaintiff has come forward with no evidence that the training policies, customs, or practices of the City and its Police Bureau were the direct or even proximate cause of his injury, or that these policies, customs and practices created a pervasive, widespread pattern of injury to the citizenry via a multitude of excessive force claims. The use of force policy, while vague, is flexible by design to allow officers to adapt to rapidly changing circumstances. The rigorous initial and subsequent yearly training for officers certified to carry tasers militate against a finding of deliberate indifference by the City on how tasers were being used. Record evidence shows that there is an annual training certification program in place for the use of tasers, and that each officer carrying one has received that training. That Officer Marabello could not recall the

specifics of the training during his deposition is not sufficient to raise an issue of material fact on a failure to train theory. Plaintiff has not submitted any other instances in the City where lack of training has resulted in excessive use of force on citizens. While Plaintiff need not suggest an alternate course of training, he must show that the specific deficiency in the training program was the cause of his injury.

Plaintiff has failed to set forth specific facts showing that there is a genuine issue for trial on his claim of municipal liability for failure to train or failure to supervise. Consequently, the City is entitled to judgment as a matter and Defendants' Motion for Summary Judgment on the issue of municipal liability should be granted.[2]

3. Conspiracy pursuant to 42 U.S.C. § 1985(2)

There are three different clauses in subsection 2 of 42 U.S.C. § 1985 involving conspiracies and each provides its own cause of action. Plaintiff does not specify the clause under which he bases his claim, so the Court will examine each clause in turn.

The first clause involves conspiracies to intimidate parties, witnesses and jurors taking part in court proceedings, and reads as follows:

> **(2) Obstructing justice; intimidating party, witness, or juror.** If two or more persons in any State or Territory conspire to deter, by force, intimidation, or

---

[2]In the caption of the Amended Complaint (ECF No. 26), Plaintiff indicates that he is suing the Defendant officers in their individual and official capacities. Suit brought against government officials in their official capacities are really actions against the governmental entity; that is, damages are not being sought from the individual but from the coffers of the entity. *See Melo v. Hafer*, 912 F.2d 628, 635 (3d Cir. 1990) (discussing *Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989)). Consequently, because the City is entitled to judgment as a matter of law on Plaintiff's § 1983 municipal liability claim, the claims against the Defendant officers in their official capacities must be dismissed with prejudice on all § 1983 claims.

threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; . . . .

42 U.S.C. 1985(2).

Here, Plaintiff's experience in court consisted only of a brief appearance before a magistrate, and no other specific allegations that could relate to a claim under this section appear in the Amended Complaint save for a vague assertion of a "continuous, systematic scheme of intimidation and harassment." Plaintiff was seen by a magistrate and charges were dropped within hours of his arrest; Plaintiff has come forward with no evidence that any sort of intimidation regarding his testimony or appearance in court was effected by Defendants.

The second and third clauses, which address obstruction of justice, read in relevant part as follows:

[I]f two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws[.]

42 U.S.C. § 1985(2). Plaintiff asserts that Defendants conspired to do him harm by agreeing to deprive him of his Constitutional rights under the Fourth and Fourteenth Amendments and by agreeing to conceal their actions. The conspiracy was allegedly furthered by the filing of false charges.

Prior interpretations of the statute by the United States Supreme Court and the United States Court of Appeals for the Third Circuit foreclose any claims made under these latter clauses as a matter of law. The second and third clauses of Section 1985(2) were drafted as part of the Civil Rights Act of 1871, and concern "equal protection of the law." *Diulus v. Churchill Valley Country Club*, 601 F. Supp. 677, 681 (W.D. Pa. 1985). Courts have held that actions brought under this section must prove class-based, invidiously discriminatory animus at the root of the conspiracy. *See Kush v. Rutledge*, 460 U.S. 719, 725-26 (1983); *Brawer v. Horowitz*, 535 F.2d 830, 840 (3d Cir. 1976). In addition, the necessary class-based discrimination must come from immutable characteristics such as race and gender. *Diulus*, 601 F. Supp at 681. As Plaintiff has not alleged that he was a member of a protected class or that the Defendants' conduct was precipitated by class-based discriminatory animus, the Amended Complaint fails to state a claim under 42 U.S.C. § 1985(2) as a matter of law. Moreover, Plaintiff has come forward with no evidence of the same. Summary judgment should therefore be granted to all Defendants on his conspiracy claim.

4. State Law Tort Claims

Defendants present no arguments in support of their Motion for Summary Judgment on Plaintiff's Pennsylvania state law tort claims of intentional infliction of emotional distress, assault and battery, and false imprisonment other than contesting the federal question claims that lead to this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a). Therefore, because the Court recommends denying summary judgment against Defendants Matson,

Hammond-Schrock, and Marabello on the excessive force claim, the Court will retain

jurisdiction over all Pennsylvania state law tort claims relating to all Defendants.

III.     <u>CONCLUSION</u>

It is respectfully recommended that the Defendants' Motion for Summary Judgment at

ECF No. 35 be granted insofar as it relates to Plaintiff's conspiracy and false arrest claims, and

as it relates to Plaintiff's § 1983 claims against Defendant City of Pittsburgh.  It is also

recommended that Defendants' Motion for Summary Judgment at ECF No. 35 be denied insofar

as it relates to Plaintiff's excessive force claim and supplemental state law tort claims against all

Defendants.

In accordance with the Magistrate's Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule

72.1.4(B) of the Local Rules for Magistrates, the parties are allowed fourteen (14) days from the

date of service to file objections to this Report and Recommendation.  Any party opposing the

objections shall have fourteen (14) days from the date of service of objections to respond thereto.

Failure to file timely objections may constitute a waiver of any appellate rights.


_____
LISA PUPO LENIHAN
United States Magistrate Judge


Dated: August 30, 2010



cc: All counsel of record
    Via electronic filing